IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL ANTHONY GUZMAN,

    Petitioner,

vs.                                                   Civ. No. 97-1527 JC/WWD

JOE R. WILLIAMS, Warden, et al.,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1. THIS MATTER is before the Court on remand from the Tenth Circuit Court of Appeals regarding Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 28, 1982, following a jury trial, Mr. Guzman was convicted of willful, deliberate, premeditated murder in the first degree and felony murder (count I), attempt to commit a felony, to wit: first degree murder (count II), criminal sexual penetration in the second degree (count III), kidnapping (counts IV and V) and tampering with evidence (count VI). Petitioner is confined pursuant to the judgment, sentence, and commitment of the Second Judicial District of the County of Bernalillo and is currently represented by court-appointed counsel.

    2. On June 17, 1999 the District Court, adopting the proposed findings and recommended disposition ("PFD") of the Magistrate Judge, dismissed Petitioner's application for Writ of Habeas Corpus. Following Petitioner's appeal of that decision, the Tenth Circuit remanded this matter to the District Court for further proceedings on the following issues: (1) whether Petitioner was incompetent at the time of his criminal trial (Claim One), (2) whether Petitioner's

counsel was ineffective in failing to adequately contest his competency before and during the trial (Claim Two); and (3) whether Petitioner's counsel was ineffective for failing to adequately present a diminished capacity defense (Claim Three).  See Guzman v. Williams, 185 F.3d 874, 1999 WL 430059, at **9 (10th Cir. Jun. 28, 1999) (unpublished table decision).

3. On remand, this Court granted Petitioner's motion for appointment of counsel, ordered Respondent to forward all state court records and transcripts, requested the parties to submit additional briefing and set an evidentiary hearing.  See Orders filed July 16, 1999 **[Doc. 27]**, August 4, 1999 **[Doc. 29]**, and March 14, 2001 **[Doc. 52]**.  On October 26, 2001, an evidentiary hearing was held[1] and both parties subsequently submitted proposed findings of fact and conclusions of law.[2]  See **[Docs. 88, 89]**.

4. On December 4, 2002, I concluded that Petitioner failed to exhaust Claim Three in state court and recommended that this case be dismissed without prejudice as a "mixed petition." See Magis. Judge's PFD at 5-7 **[Doc. 92]**.  Petitioner chose to waive his unexhausted claim and proceed with his federal petition on Claims One and Two.  See Mr. Guzman's Resp. to Magis. Judge's PFD, filed December 27, 2002 **[Doc. 96]**.  The Court granted Petitioner's request to

---

[1] During the evidentiary hearing, at which Mr. Guzman personally appeared, the Court heard testimony from Levon Tashjian, M.D. (psychiatrist), Joseph Fine, Esq. (Petitioner's trial counsel), Judge Gerald Cole (state court judge who presided over Petitioner's trial), Ray Padilla, Esq. (assistant district attorney at Petitioner's trial), Edward Siegel, Ph.D. (clinical psychologist who twice evaluated Petitioner's competency before trial), and Pierre-Yves Rouzaud, M.D. (forensic psychiatrist).

[2] Although "Petitioner's Requested Findings of Fact and Conclusions of Law" (Petitioner's PFC) **[Doc. 89]** is purportedly based on the evidentiary hearing held before me, Petitioner's PFC contains no citations to any evidence whatsoever.  See Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1019 (10th Cir. 2002) (citing Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995)) (noting that where record citations are not provided, the court "need not sift through the record in an attempt to find [the] evidence").

withdraw Claim Three and ordered further consideration of Mr. Guzman's petition solely on Claim One and Claim Two.  See Order Adopting Magis. Judge's Findings and Modifying Disposition at 3, filed January 8, 2003 **[Doc. 97]**.

    5.  Based on a review of the record, the parties' submissions and evidence presented at the evidentiary hearing, I make the following findings and conclusions and recommend that Petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice.

### *Claim One:  whether Petitioner was incompetent at the time of his criminal trial*

    6.  The test for determining a defendant's competency to stand trial is "whether [he] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  McGregor v. Gibson, 248 F.3d 946, 952 (10th Cir. 2001) (citing Dusky v. United States, 362 U.S. 402, 402 (1960)).  Competency to stand trial is a factual question.  See United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998).

    7.  Factual findings from state court proceedings are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In this case, I reach the same conclusion with respect to the state court's competency findings, whether or not I accord those findings deference and/or presume their correctness.  That is, based on a review of the record, the parties' submissions and the testimony taken at the evidentiary hearing, I find that the state court's determination that Mr. Guzman was competent to stand trial was not based on an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, federal law.  See 28 U.S.C. § 2254(d)(1),(2).

**Petitioner's competency before trial**

8. On September 24, 1981, Petitioner was found to be incompetent to stand trial and was ordered transferred to the Forensic Unit at Las Vegas, New Mexico. See Order, Resps.' Ex. E (ex. list attached to **Doc. 81**). On March 4, 1982, the prosecution filed a Motion to Determine Competency, based on notification that Mr. Guzman had successfully undergone treatment and was competent to stand trial. See Record Proper ("RP") at 275. A competency hearing was held on March 26, 1982.

9. All four of the psychiatrist or psychologist witnesses who testified at the competency hearing, in addition to Petitioner's expert, Dr. Sam Roll, concluded that Petitioner was competent to stand trial.[3] Mr. Fine did not call Dr. Roll as a defense witness at the competency hearing. See Tr. of Evidentiary Hr'g (Oct. 26, 2001) ("Tr.") at 55:11-18 (explaining that "I certainly wouldn't have called [Dr. Roll] as a witness to put him on and say [Mr. Guzman] was competent"). Moreover, Mr. Fine testified that he also "thought [Mr. Guzman] was competent at that time." Tr. at 73:18-25. Judge Cole discussed with some of the witnesses various measures that could be instituted to maintain Mr. Guzman's competency during trial. See T.1-A, at ~ 23.0; T.2-A, at 1-20 (3/26/82).[4]

10. Dr. Ned Siegel initially assessed Mr. Guzman as incompetent before he was

---

[3] Those persons who testified at Petitioner's competency hearing on March 26, 1982 included Ned Siegel, Ph.D., Ignacio Martinez, M.D., Veronica Thomas, Ph.D., and Richard Fink, Ph.D. See T.1-A, 2-A (3/26/82). Following the competency hearing and prior to trial, Drs. Thomas and Fink issued a report reiterating their opinion that Mr. Guzman was competent to stand trial. See Psychological Evaluation Report, dated April 12, 1982, Resps.' Ex. R.

[4] "T" (Tape) citations to the state record proper are to a Sony Model BM-88, with approximately 47 counters per tape side.

transferred to the Forensic Division of Las Vegas Hospital. Tr. at 190:14-17. However, Dr. Siegel noted a "significant change" in Petitioner upon his return from the hospital and eventually determined that Mr. Guzman was competent.[5] Tr. at 191:4-20. Dr. Siegel believes that the medications prescribed for Petitioner during the trial were helpful and appropriate.[6] Tr. at 191:21-25; 192:1-3. Moreover, Dr. Siegel thought Mr. Guzman's competence could be attributed to the medications that he was taking. Tr. at 171:9-12; 173:2-15; T.1-A at 23.5.

11. Although Mr. Fine did not stipulate to Mr. Guzman's competency at the March 1982 hearing,[7] he testified that "on a practical level . . . I conceded competency," explaining that "four doctors [were] saying [Mr. Guzman] was competent, . . . my own doctor . . . said he was competent, and I thought he was competent at that time." Tr. at 73:16-25. In the face of this evidence, I agree that Mr. Fine had few or no grounds on which to challenge the state experts' opinions that Mr. Guzman was competent.[8]

12. Petitioner alleges that the combination of medications that Petitioner was taking impaired his ability to understand events at trial. Petitioner's expert, Dr. Tashjian, opined that it

---

[5] Dr. Siegel administered the Georgia Court Competency Test to Petitioner on August 31, 1981 and on December 30, 1981. Tr. at 159:2-9. Dr. Siegel also administered the Rorschach test and observed Petitioner's responsiveness and flow of conversation. Tr. at 191:6-14.

[6] The parties stipulated that Mr. Guzman was taking the following medications during the trial: (1) Thorazine 200mg at bedtime, (2) Stelazine 20mg twice a day, and (3) Cogentin 2mg twice a day.

[7] At the close of the hearing, Mr. Fine stated that he would "rely on the court's discretion" regarding its competency determination. See T.2-A at 19.

[8] Nevertheless, Mr. Fine questioned at least one of the state's witnesses about the administration of certain tests. See T.2-A at 13.

5

was possible that the medications Petitioner was taking could adversely affect competency.[9] Tr. at 27:16-20.  However, Dr. Tashjian could not say that the medications would necessarily make a person incompetent.  Tr. at 51:12-19.  Moreover, Dr. Tashjian never met Mr. Guzman, tr. at 45:17-18, and could only speculate as to the particular effects of the medications on him, tr. at 51:20-23.  Thus, I do not find Dr. Tashjian's testimony to be particularly helpful or persuasive regarding the effect of these medications on Mr. Guzman.

13.  Petitioner also alleges that trial counsel "made no effort to determine the effect of the combination of medications [that Mr. Guzman was taking] . . . on [his] competence to stand trial."  Mem. in Support of Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 on Behalf of Michael Guzman ("Pet'r's Brief") at 8, filed December 15, 1999 **[Doc. 34]**.  As previously noted, however, all of the medical witnesses, including Petitioner's own expert, concluded that Mr. Guzman was competent.  Dr. Siegel attributed Mr. Guzman's competency, at least in part, to the medications' effects.  I do not find the mere fact that Petitioner was taking certain medications, without more, creates a doubt as to Petitioner's competence to stand trial.

14.  I find that the competency hearing provided Petitioner with an adequate procedure for determining whether he was competent to stand trial. See McGregor, 248 F.3d at 952 (citing Pate v. Robinson, 383 U.S. 375, 378 (1966)) (holding that the state must provide adequate procedures to prevent the conviction of legally incompetent accused individuals).  I further find that while a presumption of incompetence arose after the court's initial determination that Mr. Guzman was incompetent, sufficient competent evidence existed to overcome such a presumption following the competency hearing.  See Sena v. New Mexico State Prison, 109 F.3d 652, 655 (10th Cir. 1997)

---

[9] Dr. Tashjian did not testify at Mr. Guzman's competency hearing of March 26, 1982.

(finding that a presumption of incompetency, arising from a prior adjudication of incompetency, may be overcome by competent evidence). I now turn to the issue of Petitioner's competency during the trial.

### Petitioner's competency during trial

15. The Tenth Circuit characterized Mr. Guzman's habeas petition as alleging both substantive and procedural competency claims. Guzman, 1999 WL 430059, at \*\*6. A competency claim based upon procedural due process involves a defendant's constitutional right, once a bona fide doubt has been raised as to competency, to an adequate state procedure to insure that he is in fact competent to stand trial. See Walker v. Att'y Gen. for the State of Okla., 167 F.3d 1339, 1345 (10th Cir. 1999) (emphasis added). A defendant's irrational behavior, demeanor at trial, and prior medical opinion may create that bona fide doubt. Id. at 1346 (citing Drope v. Missouri, 420 U.S. 162, 180 (1975); Castro v. Ward, 138 F.3d 810, 818 (10th Cir. 1998)). In addition, the Supreme Court has stated that an express doubt by the attorney for the accused is a legitimate factor to consider, but alone is not enough to create sufficient doubt. Drope, 420 U.S. at 177 n.13.

16. A substantive competency claim poses a higher burden for Petitioner, in that he must demonstrate by "clear and convincing evidence" [that] a "real, substantial and legitimate doubt" [exists] as to his competency to stand trial. Rogers v. Gibson, 173 F.3d 1278, 1291 n.13 (10th Cir. 1999). Thus, a conclusion that Petitioner fails to meet the standard for demonstrating a procedural competency claim, translates to a conclusion that Petitioner's evidence fails to meet the higher standard for demonstrating substantive or actual incompetence. See McGregor, 248 F.3d at 952 (noting that "an individual raising a procedural competency claim is held to a lower

7

burden of proof than one raising a substantive competency claim").

17.     After considering the record and the evidence before me, I find that Petitioner fails to show sufficient evidence to raise a bona fide doubt regarding Mr. Guzman's competency during the trial proceedings that would have entitled him to additional state competency procedures. Accordingly, because Petitioner does not meet the requirements of a procedural competency claim, he likewise fails to meet the higher burden of a substantive or actual competency claim.

18.     Judge Cole testified that he "made a point to observe" Petitioner during the trial. Tr. at 110:9-12. For example, Judge Cole included Petitioner in all conferences in chambers. Tr. at 108:19-20. However, Judge Cole did not observe any evidence that Petitioner was incompetent during the trial. Tr. at 115:20. Further, Judge Cole testified that during the trial, "no one called to my attention . . . that there was any issue of [Petitioner's] competency," nor did Judge Cole recall being alerted to any difficulties in communicating with Petitioner during the trial. Tr. at 118:22-25; 119:1-2, 7-10.

19.     Mr. Fine's testimony essentially corroborates that of Judge Cole. Mr. Fine observed that Judge Cole was especially sensitive to Petitioner's condition during the trial and took additional measures, such as banning cameras and photographers from the courtroom, in response to recommendations made by psychological experts. Tr. at 82:3-14. Mr. Fine described Petitioner's demeanor as "good, except he would shake during the trial."[10] Tr. at 61:3-4. Mr. Fine did not observe Petitioner to be a "pillar of stone" or "zombie-like" during the trial. Tr. at 85:9-12, 17-22. Prosecutor, Ray Padilla, testified that Mr. Guzman did not look unusual during

---

[10] Mr. Fine understood the "shaking" to be a side effect of Petitioner's medications, and did not note any other unusual physical manifestations during the trial. Tr. at 61:3-6, 24-25 ; 62:1-2.

the trial and "was n[o]t falling asleep." Tr. at 138:15-25.

20.  Mr. Fine testified that, overall, Petitioner was able to assist him during the trial. Tr. at 87:10-12.  While Petitioner's ability to assist in his defense varied, and communication was more difficult at some times than others, Mr. Fine was "always able to communicate with [Mr. Guzman]." Tr. at 97:3-15.  For example, Mr. Fine described an incident in which he and the Petitioner disagreed about one of the jurors during jury selection. Tr. at 75:24-25; 76:1-24.  During the trial, Petitioner responded to some aspects of witness testimony. Tr. at 61:15-19 (describing how Petitioner denied raping one of the victims).

21. Mr. Fine was aware of the medications that Mr. Guzman was taking and inquired into how Mr. Guzman was feeling. Tr. at 64:17-25; 65:1-3.  However, Mr. Fine does not recall Mr. Guzman ever saying anything to him about his medications. Tr. at 65:4-7.  Dr. Siegel also testified that he does not recall Mr. Guzman ever complaining about his medications. Tr. at 164:15-17.

22. Before Mr. Guzman was transferred to the Las Vegas Hospital, Mr. Fine believed that Mr. Guzman was incompetent, explaining that "there were times when [Petitioner] could not communicate." Tr. at 96:15-19.  Mr. Fine was concerned about Petitioner relapsing into incompetency during the trial, tr. at 63:16-20, and recognized the "necess[ity] to monitor [Mr. Guzman] pretty carefully and watch for any disturbances," tr. at 74:5-8.  Mr. Fine met with Petitioner before the start of trial each day, and usually met with Petitioner at the conclusion of testimony each day. Tr. at 84:21-25; 85:1.  Finally, although he did not perceive Mr. Guzman's competency to be an issue during the trial, tr. at 88:4-7,[11] Mr. Fine "would have said something to

---

[11] (explaining why he did not raise competency as an issue on direct appeal)

Judge Cole," if he thought that Mr. Guzman was not competent during the trial,[12] tr. at 87:13-17.

23. I find the testimony of Judge Cole, Mr. Fines, Mr. Padilla and Dr. Siegel, as set forth above, to be credible. Further, I find that this testimony indicates that Judge Cole was particularly "alert to circumstances suggesting a change that would render the [Petitioner] unable to meet the standard of competence to stand trial." McGregor, 248 F.3d at 952 (citing Drope, 420 U.S. at 181)).

24. Petitioner alleges, in contradiction to the testimony of Judge Cole and Mr. Fine, that Mr. Fine "indicated to the trial court on several occasions that he was not able to communicate effectively with Guzman." Id. In his briefing, Petitioner explained that trial counsel "expressed his concerns regarding his inability to communicate with Mr. Guzman . . . . outside the record." Pet'r's Brief at 9. However, I find that Petitioner's conclusory allegation is not supported by the evidence.

25. In his Reply brief, Petitioner asserted that "at one point during the trial, trial counsel mentioned to the trial court that it had been difficult working with Mr. Guzman." Pet'r's Mem. Reply Br. at 5, filed May 15, 2000 **[Doc. 49]** (citing T.10-B, 4/21/82).[13] I found the quality of the audiotape to be extremely poor. However, I was able to discern the following: (1) Early in the tape, a male voice indicates that someone is or was "a little upset and nervous." T.10-B at 1.0. (2) Shortly thereafter, the court excuses Mr. Guzman, and a recorded statement of Mr. Guzman is

---

[12] Mr. Fine explained that he might have occasionally notified Judge Cole of minor concerns related to Petitioner's condition. Tr. at 82:24-25; 83:1-7 (testifying that he may have alerted the court if Petitioner was "upset one day or not feeling well").

[13] I find that citing to an entire audiotape is tantamount to providing no citation at all. Nevertheless, the Court listened to all of Tape 10-B of 4/21/82, in order to determine whether any evidence supported Petitioner's allegation.

10

played. T.10-B at 3.3. (3) After the recording is played, a female voice asks "what was his reaction to [either giving or hearing] the statement?" to which a male voice responds "upset and nervous." T.10-B at 30. (4) Toward the end of the tape, the trial court once again excuses Mr. Guzman, and another recorded statement is played to the end of Tape 10-B. T.10-B at 43.2.

26. I find that nothing in Tape 10-B supports an allegation that Mr. Fine notified the court of any difficulty working with Mr. Guzman. Further, even if Mr. Fine had made such a statement, it would fail to raise a bona fide doubt with respect to Petitioner's competency, nor would it be evidence of ineffective assistance of counsel. Finally, such a statement would not be inconsistent with Mr. Fine's hearing testimony. See, e.g., Tr. 82:24-25; 83:1-7; 97:3-15 (explaining that he may have occasionally notified Judge Cole of minor difficulties related to Petitioner's condition and testifying that communication with Mr. Guzman was more difficult at some times than others).

27. Based on the record before me and testimony of the witnesses, and having observed the demeanor of the witnesses, I find that ample evidence supports a finding that Mr. Guzman was competent to stand trial. I also find that ample evidence supports a finding that Mr. Guzman remained competent throughout his trial.

28. I find that Petitioner fails to meet his burden of showing that he was tried and convicted while a bona fide doubt existed during the trial that would have alerted a reasonable court that Petitioner's competence was in question. Finally, Petitioner fails to demonstrate, whether by clear and convincing evidence or a preponderance of the evidence, that a "real, substantial and legitimate doubt" exists regarding Mr. Guzman's competency to stand trial or his continued competency during trial. Consequently, relief should be denied on Petitioner's claim

that he was incompetent during part or all of his trial.

### *Claim Two: whether Petitioner's counsel was ineffective in failing to adequately contest his competency before and during the trial*

29. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness and was so prejudicial that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The defendant/petitioner bears the burden of proving both deficient performance and prejudice." Skidgel v. Williams, 172 F.3d 63, 1999 WL 41063, at **6 (10th Cir. Feb. 1, 1999) (unpublished table decision) (citing Strickland v. Washington, 477 U.S. 668, 688 (1984); Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994)) (internal quotations omitted). A court's review of the attorney's performance must be highly deferential. Strickland, 477 U.S. at 689.

30. The Tenth Circuit characterized Claim Two as alleging that Petitioner's counsel was ineffective in failing to adequately contest Mr. Guzman's competency before and during the trial. See Guzman, 1999 WL 430059, at **7. The Tenth Circuit further noted that "[Petitioner's] ineffectiveness claim is not severable from the underlying competency claim." Guzman, 1999 WL 430059, at **8. Thus, inasmuch as Petitioner has failed to show a bona fide or substantial doubt with respect to his competency, he has also failed to carry his burden of showing that counsel was deficient for failing to adequately contest his competency or that he suffered prejudice as a result of counsel's alleged deficient conduct.

31. Moreover, in his briefing submitted prior to the evidentiary hearing, Petitioner alleged that trial counsel was ineffective only for failing to "appropriately consider Mr. Guzman's

12

competence <u>during</u> the trial." Pet'r's Br. at 14 (emphasis added).[14]  Accordingly, Petitioner has abandoned any claim that trial counsel was ineffective for failing to adequately contest Petitioner's competency <u>before</u> trial.  In any event, the evidence overwhelmingly supports a finding that Petitioner did not receive ineffective assistance of counsel with respect to trial counsel's conduct at the competency hearing, for substantially the same reasons set forth above.  Because Petitioner does not show that the conduct of his trial counsel was deficient or prejudicial to his case, relief based on this claim should be denied.

## Recommended Disposition

I recommend that Petitioner's application for writ of habeas corpus be denied and that this cause be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1).

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE

---

[14]  Further, Petitioner did not request the Court to make any findings of fact with respect to trial counsel's conduct prior to trial.  Indeed, Petitioner requests the Court to conclude only that "Mr. Guzman received ineffective assistance of counsel <u>during</u> his trial do [sic] to trial counsel's failure to raise competence as an issue <u>during</u> the trial." Pet'r's PFC at 3-4 (emphasis added).